UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| BRIAN JABLONSKI[1] <br><br> Plaintiff, <br><br> v. <br><br> KASHYAP P. PATEL, <br> in his official capacity as Director, <br> Federal Bureau of Investigation <br> 935 Pennsylvania Avenue, N.W. <br> Washington, D.C. 20530 <br><br> and <br><br> FEDERAL BUREAU OF <br> INVESTIGATION <br> 935 Pennsylvania Avenue, N.W. <br> Washington, D.C. 20530 <br><br> and <br><br> THE UNITED STATES OF AMERICA <br> Washington, D.C. 20500 <br><br> Defendants. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * Civil Action No: 26-00449 <br> * <br> * **JURY TRIAL DEMANDED** <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * |

## COMPLAINT

Plaintiff Brian Jablonski ("Mr. Jablonski") faithfully dedicated nearly two decades of his life as an employee of the United States Government, with almost eighteen of those years serving the Defendant Federal Bureau of Investigation ("FBI"). Yet, on February 1, 2026, he was suddenly, arbitrarily and unlawfully fired. At the time of his termination, Mr. Jablonski was a Management

---

[1] Pursuant to Local Civil Rule 5.1(c)(1), the Plaintiff's residential address is being filed under seal with the Court in a separate Notice of Filing.

and Program Analyst, where, among other tasks, he faithfully worked to improve operational efficiencies regarding the FBI's background investigations process.

Notwithstanding decades of statutory and regulatory provisions that both Congress and the Executive Branch painstakingly crafted and implemented governing how and when members of the civil service can be terminated, and the limitations that apply to such proceedings, Defendant FBI Director Kashyap P. Patel ("Director Patel") personally summarily removed Mr. Jablonski from federal service through issuance of a one-page memorandum that solely relied upon "Article II of the United States Constitution and the laws of the United States []." ("Termination Memo"). In so doing, the Defendants expressly and deliberately failed to afford Mr. Jablonski the required due process prior to his termination.

This action is being brought against Defendants Director Patel, in his official capacity, the FBI, and the United States of America (herein referred to collectively as the "Defendants" or "Government") for the purposes of seeking relief under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, the All Writs Act, and the First and Fifth Amendments to the Constitution of the United States.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

2. Venue is appropriate in this judicial district under 28 U.S.C. § 1391(b), (e) and 5 U.S.C. § 703.

3. Sovereign immunity for non-monetary relief is waived under 5 U.S.C. § 702, which entitles Mr. Jablonski to relief because Defendants acted unconstitutionally and beyond statutory authority.

## PARTIES

4. Plaintiff Mr. Jablonski would have achieved twenty years of federal employment on September 17, 2026, eighteen years of which was with Defendant FBI.

5. Defendant Director Patel is sued in his official capacity as the FBI's Director. He personally signed the Termination Memo that removed Mr. Jablonski from federal service.

6. Defendant FBI, which is headquartered in Washington, D.C., is an agency of the United States as defined by 5 U.S.C. § 701 and is subject to the jurisdiction of this Court. Defendant FBI's officials or employees terminated Mr. Jablonski.

7. Defendant United States of America is responsible for the state action being challenged by Mr. Jablonski and which was by exercised by the other Defendants, especially when reliance is upon the apparent authority of the President under Article II of the U.S. Constitution.

## FACTS

*Mr. Jablonski's Summary Termination*

8. On Thursday, January 29, 2026, Mr. Jablonski was called into a meeting with FBI security and told he was being placed on a ten-day paid administrative leave. It was stated that he was not in any trouble at the time, but they were reviewing some online activity that had been reported. They did not specify what the nature of the online activity was or what platform it might have been.

9. Three days later, on Monday, February 1, 2026, Mr. Jablonski reported to FBI headquarters to turn in his laptop based on instructions he had received. Upon arrival, he was informed there would be a meeting to discuss his situation, but he was not told in advance what the meeting would be about. He was taken to a conference room where he was provided a one-page letter signed personally by Defendant Director Patel and informed him of his termination.

The memo was dated Friday, January 30, 2026, the day after he was told he was being placed on administrative leave. The memo reads, in relevant parts, as follows:

> This document provides official notice that you are being summarily dismissed from your position at the Federal Bureau of Investigation, and removed from the federal service, under my authority as the FBI Director, effective immediately.
>
> You have demonstrated unprofessional conduct, and pursuant to Article II of the United States Constitution and the laws of the United States, your employment with the Federal Bureau of Investigation is hereby terminated.

10. Mr. Jablonski asked the FBI official who provided him with this memo if he would be provided any evidence of wrongdoing. He was simply told there was no further information available.

11. At this time, Mr. Jablonski remains usure of what he did to deserve to be summarily terminated, other than being told his administrative leave was based on unidentified online activity. In fact, Mr. Jablonski did not then, nor does he now, have a significant social media presence online. He has a very basic public LinkedIn profile and a Facebook account set at high privacy protections, i.e., only those individuals he was "friends" with could review his postings/comments.

12. As a U.S. Government employee and a member of the civil service, Mr. Jablonski was entitled to procedural and substantive due process before removal from federal service. The Defendants' summary removal of him without such process was unlawful.

***Limitations on the FBI Director's Ability to Summarily Remove FBI Employees***

13. Defendant Director Patel does not have absolute authority, much less under Article II of the Constitution, to simply remove FBI employees without due process. Specifically, there are crucial guardrails that protect employees from such arbitrary or unlawful termination.

14. The Defendants may only terminate Mr. Jablonski if doing so does not violate statutorily defined prohibited personnel practices, and only after established due process procedures are followed.

15. The limitations on Defendant Director Patel's removal authority include, but are not limited to, the Prohibited Personnel Practices, as administered and interpreted by the Office of Personnel Management ("OPM"). *See* 5 U.S.C. § 2302(b).

16. OPM is explicitly charged with administering the federal civil service, which encompasses all federal employment. *Id*. at § 1103(a)(5). Additionally, OPM is responsible for promoting and enforcing nine Merit Systems Principles, which apply across the federal service and dictate that personnel actions (including removals) must be based on merit and fitness, and must not be arbitrary, capricious, or discriminatory. *Id*. at § 2301. These principles require that "[e]mployees should be protected against arbitrary action, personal favoritism, or coercion for partisan political purposes." *Id*. at § 2301(b)(8)(A).

17. OPM also administers and interprets the Prohibited Personnel Practices as outlined in § 2302(b). These statutory prohibitions prevent agencies from taking, or failing to take, personnel actions against members of the civil service for certain reasons. For example, agencies cannot discriminate against a person for conduct that does not adversely affect performance, their political affiliation, or their refusal to engage in any coerced political activity. *See e.g.*, § 2302(b)(1)(prohibiting discrimination based on protected characteristics, including political affiliation); § 2302(b)(3)(prohibiting action taken against any employee as reprisal for refusal to engage in any coerced political activity); and § 2302(b)(10)(prohibiting discrimination based on conduct not adversely affecting performance).

18. Congress enacted the Civil Service Reform Act ("CSRA") in 1978, to create a uniform scheme for administrative and judicial review of covered federal employee personnel actions to ensure a non-political career civil service for the good of the American public. That scheme sets forth the protections and remedies available to such employees as well as the procedural process they must follow. *Id*. at § 4301(b)(1). But the CSRA expressly excludes FBI employees from most of its provisions, including the right to appeal removals or other adverse actions to the Merit Systems Protection Board, except where the employee is a preference-eligible veteran. 5 U.S.C. § 7511(b)(8). Mr. Jablonski does not meet that exception.

19. Instead, the FBI has adopted its own internal procedures that parallel the protections offered by the CSRA. These protections for personnel are memorialized in multiple written documents and implemented through well-established internal practices and procedures.

20. For example, the FBI issued an "Offense Codes and Penalty Guidelines Governing FBI's Internal Disciplinary Process (Jan. 1, 2017)."[2]

   a. The document explains that the "FBI's disciplinary process serves to ensure adherence to the Bureau's rigorous standards of conduct" and "provide[s] general categories of misconduct for which employees may be disciplined."

   b. The document reflects that investigations regarding employee misconduct are handled by the FBI's Inspection Division (INSD); adjudications by the Office of Professional Responsibility (OPR); and appeals by the Human Resources Branch (HRB).

   c. The document also includes a table of FBI Offense Codes with corresponding penalty ranges.

---

[2] *https://vault.fbi.gov/offense-codes-and-penalty-guidelines-governing-fbis-internal-disciplinary-process/offense-codes-and-penalty-guidelines-governing-fbis-internal-disciplinary-process-final*.

21. An OPR Policy Guide, dated September 8, 2021, outlines the FBI's policy for OPR matters.

   a. The Policy Guide provides that OPR's role is to implement the "Offense Codes and Penalty Guidelines Governing FBI's Internal Disciplinary Process" document described above and to apply "FBI standards equally regardless of. . . protected status."

   b. The document provides that OPR conducts "prompt, thorough, and fair adjudication of employee misconduct cases."

   c. The document explains that the DOJ's Office of the Inspector General (DOJ-OIG) and the FBI's INSD "review all allegations of employee misconduct to determine whether an investigation is warranted… If an investigation is warranted, an administrative inquiry will be opened and [FBI's INSD or DOJ-OIG] will investigate the matter."

   d. The document explains that "[u]pon conclusion of the investigative phase, the matter will be referred to OPR for adjudication." At the same time, INSD must "request[] the submission of a Douglas Factors assessment", which must in turn be provided to OPR by the employee's supervisor "within two weeks." The Douglas Factors are twelve "factors articulated by the Merit Systems Protection Board in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280 (1981)" to be considered before imposing any penalty, including the "employee's past work record" and "[m]itigating circumstances surrounding the offense."

   e. The document provides that OPR will review the entirety of the file "to determine, by a preponderance of the evidence, whether the employee violated an FBI Offense Code." If so, "OPR will determine the appropriate penalty" by reference to the penalty ranges in the "Offense Codes and Penalty Guidelines Governing FBI's Internal Disciplinary Process" document described above. In addition, "OPR will prepare a report of investigation that addresses the allegations, relevant facts, and applicable legal standards."

   f. The document provides for "summary dismissal" of employees only in cases where "(a) the safety of the public; (b) the safety of fellow employees; (c) national security interests; or (d) other compelling or exigent circumstances are at stake." Only the FBI Director, Deputy Director, or Assistant Director for OPR may exercise the authority, which "is an extraordinary remedy to be exercised only in compelling or exigent circumstances."

22. An Internal Affairs Policy Guide, dated July 11, 2024, outlines the FBI's policy for Inspection Division matters and provides for "fair, timely, and thorough" investigations and reviews of "allegations of misconduct or criminality against FBI employees."

23. In 2021, DOJ-OIG published a report on the FBI's misconduct investigations process and noted that summary dismissal is reserved for "extraordinary cases" that "require a strong and swift response" such as "cases that involved child pornography" and "the case of an employee who stole drug evidence for personal use."

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE FIRST AMENDMENT**
**(RETALIATION FOR PROTECTED SPEECH)**
**(Against All Defendants)**

24. Mr. Jablonski repeats and realleges the allegations contained in paragraphs 8 through 23 above, inclusive.

25. The First Amendment to the U.S. Constitution guarantees all individuals "the freedom of speech", which includes free expression and association. These rights allow government employees to speak on matters of public concern without fear of retribution and retaliation.

26. Upon information and belief, the Defendants retaliated against Mr. Jablonski because of personal opinions he expressed online and unlawfully removed him from federal service due solely to the expression of his constitutionally protected freedom of speech. Any online activity which forms the basis for Mr. Jablonski's termination constituted his own personal opinions, were not related to his FBI employment and discussed matters of public concern.

27. Mr. Jablonski was not terminated due to any actions or statements made in a Government facility, on Government equipment, or through Government systems or databases. Any statements he made via social media did not consist of any information Mr. Jablonski learned as part of his official duties.

28. Mr. Jablonski's protected speech had no known impact on the work he performed for the Defendants. Upon information and belief, the Defendants did nothing to determine whether Mr. Jablonski's protected speech actually caused any kind of disruption or hampered his ability to perform his employment responsibilities.

29. The Defendants would not have terminated Mr. Jablonski in the absence of his protected speech. The sole stated basis for his termination was, in fact, his protected speech.

30. Mr. Jablonski has suffered adverse and harmful effects, including, but not limited to lost and/or jeopardized present and/or future financial and employment opportunities.

### SECOND CAUSE OF ACTION
### VIOLATION OF THE FIFTH AMENDMENT
### (PROCEDURAL DUE PROCESS, PROPERTY INTEREST)
### (Against All Defendants)

31. Mr. Jablonski repeats and realleges the allegations contained in paragraphs 8 through 23 above, inclusive.

32. Mr. Jablonski has a protected property interest in his continued employment with the FBI and the United States Government.

33. Defendants' actions to terminate Mr. Jablonski without proper due process unlawfully deprived Mr. Jablonski of that property interest.

34. Mr. Jablonski has suffered adverse and harmful effects from the deprivation of his property interests in his employment, including, but not limited to, loss of income and lost or jeopardized present and future financial opportunities.

**THIRD CAUSE OF ACTION**
**VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT**
**(*ULTRA VIRES* IN VIOLATION OF STATUTORY AUTHORITY)**
**(Against Defendants Director Patel and the FBI)**

35. Mr. Jablonski repeats and realleges the allegations contained in paragraphs 8 through 23 above, inclusive.

36. Defendants Director Patel and the FBI had no lawful authority to terminate Mr. Jablonski from federal service without adhering to the statutory protections to which he was entitled. His termination was therefore *ultra vires* and without legal force or effect.

37. Mr. Jablonski has suffered adverse and harmful effects, including, but not limited to, lost or jeopardized present or future financial opportunities. As such, he is entitled to reinstatement, an award of backpay and any other available damages.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT**
**- 5 U.S.C. §§ 706(1) and 706(2)**
**(Against Defendants Director Patel and the FBI)**

38. Mr. Jablonski repeats and realleges the allegations contained in paragraphs 8 through 23 above, inclusive.

39. Defendants Director Patel and the FBI, in authorizing and signing the issuance of the Termination Memo, implemented a final agency decision "not in accordance with the law," "contrary to a constitutional right, power, privilege, or immunity," and "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2).

40. Mr. Jablonski has suffered adverse and harmful effects, including, but not limited to, lost or jeopardized present or future financial opportunities.

## FIFTH CAUSE OF ACTION
## DECLARATORY JUDGMENT – 28 U.S.C. §§ 2201 and 2202
## (Against All Defendants)

41. Mr. Jablonski repeats and realleges the allegations contained in paragraphs 8 through 23 above, inclusive.

42. Mr. Jablonski is entitled to declaratory relief on the basis of all claims identified. There is a substantial and ongoing controversy between Mr. Jablonski and the Defendants, and a declaration of rights under the Declaratory Judgment Act is both necessary and appropriate to establish that the Defendants do not have authority to remove Mr. Jablonski without affording him all the rights and protections set forth by applicable statutes and regulations.

43. Mr. Jablonski has suffered adverse and harmful effects, including, but not limited to, lost or jeopardized present or future financial opportunities.

## SIXTH CAUSE OF ACTION
## WRIT OF MANDAMUS
## (Against All Defendants)

44. Mr. Jablonski repeats and realleges the allegations contained in paragraphs 8 through 23 above, inclusive.

45. In the alternative, Mr. Jablonski is entitled to a writ of mandamus commanding the Defendants to return him to his position of employment and not remove him from federal service without first following lawful procedures. Defendants have a legal duty not to terminate Mr. Jablonski without affording him the protections prescribed by law and, absent this Court granting relief, there is no other adequate means of redress.

46. The provisions of 28 U.S.C. § 1361 create jurisdiction in cases seeking a writ of mandamus against federal officers, employees, and agencies, and they provide for an independent cause of action in the absence of any other available remedies. To the extent relief is

unavailable under either the APA, common law equity, or any other law to enjoin unlawful government action, mandamus lies here.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Brian Jablonski requests that the Court award him the following relief:

(1) An order that the Defendants immediately reinstate Mr. Jablonski and enjoin them from taking any further adverse personnel action against him without providing appropriate procedural and substantive due process as required by law and the Fifth Amendment;

(2) A declaration that the Defendants' termination of Mr. Jablonski's employment was in retaliation for protected speech under the First Amendment and that Mr. Jablonski is entitled to appropriate relief;

(3) A declaration that the Defendants' actions violated Mr. Jablonski's Fifth Amendment due process and statutory rights and order appropriate relief;

(4) A declaration that Defendants Director Patel and the FBI violated the Administrative Procedure Act;

(5) An award of backpay and other monetary and administrative relief as appropriate;

(6) Award of the costs of this action and reasonable attorney fees under the Equal Access to Justice Act or any other applicable law; and

(7) grant such other relief as the Court may deem just and proper.

Date:   February 12, 2026

                                          Respectfully submitted,

                                          /s/ *Mark S. Zaid*
                                          _____

Mark S. Zaid, Esq.
D.C. Bar #440532
Bradley P. Moss, Esq.
D.C. Bar #975905
Kevin T. Carroll, Esq.
D.C. Bar #1021479
Geoffrey Deweese, Esq.
(*Pro Hac Vice* pending)
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 700
Washington, D.C. 20036
(202) 498-0011
Mark@MarkZaid.com
Brad@MarkZaid.com
Geoffrey@MarkZaid.com

Attorneys for the Plaintiff