UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRIAN JABLONSKI,<br><br>Plaintiff,<br><br>v.<br><br>KASHYAP P. PATEL,<br>Director, Federal Bureau of Investigation,<br>*et al.*,<br><br>Defendants. | Civil Action No. 26-0449 (JMC) |

**DEFENDANTS' COMBINED REPLY IN SUPPORT OF THEIR MOTION TO DISMISS AND MOTION TO STAY CONSIDERATION OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ........................................................................................................1

ARGUMENT ...............................................................................................................2

I. Consideration of Jablonski's Motion for Summary Judgment Should Be Stayed or His Motion Should Be Denied as Premature. ...........................................................2

A. A Motion for Summary Judgment Is Premature When a Motion To Dismiss Is Pending. ..........................................................................................................2

B. Jablonski's Analysis of the Article II Removal Power Is Not Material to the Pending Motion To Dismiss. ..............................................................................3

II. Jablonski's Constitutional Claims Should Be Dismissed. ..............................................5

A. Jablonski Cannot Plausibly Allege a First Amendment Retaliation Claim Without Identifying or Describing Constitutionally Protected Speech. .................5

B. Jablonski's Procedural Due Process Claim Fails Because He Had No Property Interest in His FBI Employment.........................................................6

C. Recent District Court Decisions on CSRA Channeling Are Not Pertinent to Jablonski's Claims. ..........................................................................................9

III. Jablonski's Administrative Procedure Act Claim Is Precluded by the Civil Service Reform Act....................................................................................................10

IV. Jablonski's Ultra Vires Claim Should Be Dismissed. ...................................................11

V. Jablonski's Derivative Claims Should Be Dismissed.....................................................11

CONCLUSION..........................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam*,
406 F. Supp. 3d 72 (D.D.C. 2019) ........ 8, 10

*Bd. of Regents of State Colls. v. Roth*,
408 U.S. 564 (1972) ........ 8

*Comans v. Exec. Off. of the President*,
Civ. A. No. 25-1237-MSJ-WEF, 2026 WL 1132803 (E.D. Va. Apr. 15, 2026) ........ 11

*Comey v. Dep't of Justice*,
Civ. A. No. 25-7625 (JMF), 2026 WL 1142679 (S.D.N.Y. Apr. 28, 2026) ........ 11

*Comm. on Ways & Means v. Dep't of Treasury*,
Civ. A. No. 19-1974 (TNM), 2019 WL 4094563 (D.D.C. Aug. 29, 2019) ........ 3

*Durand v. District of Columbia*,
38 F.3d (D.D.C. 2014) ........ 7

*Felder v. WMATA*,
105 F. Supp. 3d 52 (D.D.C. 2015) ........ 8

*Fornaro v. James*,
416 F.3d 63 (D.C. Cir. 2005) ........ 12

*Furniture Brands Int'l Inc. v. U.S. Int'l Trade Comm'n*,
Civ. A. No. 11-0202 (JDB), 2011 WL 10959877 (D.D.C. Apr. 8, 2011) ........ 3

*Grosdidier v. Chairman, Broad. Bd. of Govs.*,
560 F.3d 495 (D.C. Cir. 2009) ........ 12

*Langeman v. Garland*,
88 F.4th 289 (D.C. Cir. 2023) ........ *passim*

*Leedom v. Kyne*,
358 U.S. 184 (1958) ........ 12

*McCabe v. Barr*,
490 F. Supp. 3d 198 (D.D.C. 2020) ........ 10

*Nuclear Regulatory Comm'n v. Texas*,
605 U.S. 665 (2025) ........ 12, 13

*Pickering v. Bd. of Educ.*,
391 U.S. 563 (1968) ........ 7

*Strzok v. Garland*,
828 F. Supp. 3d 40 (D.D.C. 2025) ........ 11

*Syracuse Peace Council v. FCC*,
867 F.2d 654 (D.C. Cir. 1989) ........ 4

*Turner v. U.S. Capitol Police*,
34 F. Supp. 3d 124 (D.D.C. 2014) ........ 7

*United States v. Fausto*,
484 U.S. 439 (1988) ........ 12

*West Virginia ex rel. Morrisey v. Dep't of Health and Human Serv.*,
Civ. A. No. 14-1287 (RBW), 2014 WL 12803229 (D.D.C. Nov. 3, 2014) ........ 2

*Zavadovsky v. Rabl*,
Civ. A. No. 24-1997 (RC), 2025 WL 2466024 (D.D.C. Aug. 27, 2025)..................................3

**Statutes and Regulations**

28 U.S.C. §§ 533-34.....................................................................................................5
28 C.F.R. § 0.138..........................................................................................................5

Defendants Kashyap Patel, Director, Federal Bureau of Investigation ("FBI"); the FBI; and the United States of America respectfully submit this reply in support of their Motion to Dismiss Plaintiff Brian Jablonski's Complaint for lack of subject-matter jurisdiction and for failure to state a claim (ECF No. 8, "Defs.' Mot.") and this Motion to Stay Consideration of Plaintiff's Cross-Motion for Partial Summary Judgment (ECF No. 10).

**INTRODUCTION**

Plaintiff Brian Jablonski brings a series of claims related to his summary dismissal as an FBI employee, but none are viable. His First Amendment claim is that his dismissal was unconstitutional retaliation for "online activity" that he does not identify or describe. This is an elementary pleading failure because he cannot plausibly allege that he was (for example) speaking as a citizen on a matter of public concern without at least describing the speech in question. His Fifth Amendment claim for violation of procedural due process suffers from a different kind of failure: his claim of a property interest in his FBI employment is foreclosed by *Langeman v. Garland*, 88 F.4th 289, 295–96 (D.C. Cir. 2023). Jablonski's statutory, ultra vires, and derivative claims fare no better, for the reasons described at length below.

That leaves Jablonski's cross-motion for summary judgment. His motion is premature because considerations of judicial economy weigh against proceeding to the merits before the sufficiency of the complaint has been established. In any event, the premise of Jablonski's motion—namely, that his theories on the Article II removal power could demonstrate his entitlement to judgment in his favor—is deeply flawed. Director Patel's removal of Jablonski did not rest exclusively or primarily on Article II, but also invoked "the laws of the United States." ECF No. 9-1 at 6. That basis for Jablonski's removal is especially salient here because the Director has personnel authorities, including the authority to summarily dismiss FBI personnel, that are not subject to dispute. Consideration of Jablonski's cross-motion should be stayed.

## ARGUMENT

### I. Consideration of Jablonski's Motion for Summary Judgment Should Be Stayed or His Motion Should Be Denied as Premature.

Concurrently with his opposition to Defendants' motion to dismiss, Jablonski has filed a motion for partial summary judgment. In doing so, he has gotten ahead of himself. A motion for summary judgment is premature especially where, as here, Defendants have not yet answered the complaint and that complaint suffers from substantial threshold defects.

#### A. A Motion for Summary Judgment Is Premature When a Motion To Dismiss Is Pending.

As a general matter, summary judgment motions are premature where the defendants have not yet filed a responsive pleading. Although Rule 56(b) provides that "a party may file a motion for summary judgment at any time until 30 days after the close of all discovery," the advisory committee notes to that rule and the great weight of authority make clear that such motions are "premature until the nonmovant has had time to file a responsive pleading or other pretrial proceedings have been had." Fed. R. Civ. P. 56(b) advisory committee note. Especially where a plaintiff has filed a motion for summary judgment during the pendency of a motion to dismiss under Rules 12(b)(1) or 12(b)(6), "in the interest of judicial economy, Courts will stay summary judgment briefing pending the resolution of [the] motion to dismiss." *West Virginia ex rel. Morrisey v. Dep't of Health and Human Serv.*, Civ. A. No. 14-1287 (RBW), 2014 WL 12803229, at *1 (D.D.C. Nov. 3, 2014); *see also, e.g.*, *Zavadovsky v. Rabl*, Civ. A. No. 24-1997 (RC), 2025 WL 2466024, at *4 (D.D.C. Aug. 27, 2025) (staying summary judgment briefing to "'allow[] the Court to assure itself of jurisdiction and address threshold matters' before turning to the other issues in the litigation"); *Comm. on Ways & Means v. Dep't of Treasury*, Civ. A. No. 19-1974 (TNM), 2019 WL 4094563, at *2 (D.D.C. Aug. 29, 2019) (denying summary judgment motion as premature for similar reasons); *Furniture Brands Int'l Inc. v. U.S. Int'l Trade Comm'n*, Civ. A.

No. 11-0202 (JDB), 2011 WL 10959877, at *1 (D.D.C. Apr. 8, 2011) (staying summary judgment briefing "allow[s] the parties to avoid the unnecessary expense, the undue burden, and the expenditure of time to brief a motion that the Court may not decide"). Moreover, the case for denying Jablonski's motion as premature is especially strong here. Although Jablonski styles his motion as a "partial" motion for summary judgment, he seeks nothing less than his "immediate[] reinstate[ment]" before the sufficiency of his complaint has even been tested. Consideration of Jablonski's motion should be stayed, or his motion should be denied as premature, for these reasons.[1]

### B. Jablonski's Analysis of the Article II Removal Power Is Not Material to the Pending Motion To Dismiss.

Jablonski's motion for summary judgment is not only premature as a procedural matter, it prematurely raises questions that are immaterial to Defendants' pending motion to dismiss. Jablonski's claim that only "Director Patel's Article II authority . . . to terminate" Jablonski "need[s] to be addressed at this time" rests on a series of mistaken assumptions. Pl.'s Mem. 1.

Specifically, Jablonski's extended challenge to Director Patel's "Article II authority," Pl.'s Mem. 1, 5, 7–19, elides a crucial fact about the basis for Jablonski's termination. Director Patel terminated Jablonski "pursuant to Article II of the United States Constitution *and the laws of the United States*," *id*. at 3 (emphasis added), meaning that Jablonski's removal could be sustained *either* as a delegated exercise of the President's Article II authority *or* as an exercise of the Director's ordinary, long-recognized authority to summarily dismiss FBI personnel. *See Syracuse Peace Council v. FCC*, 867 F.2d 654, 657 (D.C. Cir. 1989) ("[I]f an agency relies on two grounds

---

[1] If the Court declines to stay consideration of Jablonski's motion, Defendants respectfully request that this Court provide thirty days from the date of the Court's order for Defendants to further respond to Jablonski's motion.

for a decision, a court may sustain it if one is valid."). As a result, Jablonski's Article II theorizing does not undermine the case for dismissal because Director Patel's authority to summarily dismiss FBI employees has a well-established basis in law separate from the President's Article II removal power. In particular, 28 C.F.R. § 0.138 confers upon the FBI Director the "power and authority vested in the Attorney General by law to take final action in matters pertaining to the employment . . . of [FBI] personnel in General Schedule grades GS-1 through GS-15." *See also* 28 U.S.C. §§ 533-34 (setting out certain appointment authorities held by the Attorney General); Jablonski Decl. (ECF No. 9-1) ¶ 3 (Jablonski was GS-13 employee at time of termination). Under that authority, the FBI Director can remove employees, including through the summary dismissal authority identified and recognized by Jablonski's own Complaint and briefing in this matter. *E.g.*, Compl. ¶¶ 21(f), 23; Pl.'s Mem. 26–28. This permits the Director to summarily dismiss FBI employees when he or certain designees judge that "compelling or exigent considerations are at stake." *Id*. at 26, 27 n.8; *see Langeman v. Garland*, 88 F.4th 289, 295–96 (D.C. Cir. 2023).

Jablonski at times seems to recognize that his summary dismissal did not rely exclusively on the Article II removal power. *E.g.*, Pl.'s Mem. 15 n.4 ("Conceivably, the Defendants could argue that Defendant Director Patel could have simply summarily dismissed Mr. Jablonski in reliance on the FBI's own internal disciplinary policies."). Indeed, he "does not dispute that there are procedural, internal FBI mechanisms that could permit an FBI Director to summarily terminate an employee," but then concludes without explanation that "none of [those mechanisms] were followed or relied upon in his situation." Pl.'s Mem. 25. With respect, Jablonski's basis for discounting the Director's summary dismissal authorities is not clear. Director Patel invoked those authorities by "provid[ing]" Jablonski notice that he was "being summarily dismissed" "pursuant to Article II of the United States Constitution and the laws of the United States." ECF No. 9-1 at

ECF p. 6 (termination letter). For this reason, Jablonski's near-exclusive emphasis on the nature and extent of the President's Article II removal power is improvident. None of the Article II questions raised by Jablonski are dispositive of Defendants' pending motion to dismiss, and in that sense they are premature.

## II. Jablonski's Constitutional Claims Should Be Dismissed.

Jablonski argues at length that the district court has jurisdiction to hear his constitutional claims, Pl.'s Mem. 16–22, but that is not the issue. The issue is that he has failed to state a claim. Jablonski's First Amendment claim does not plausibly allege retaliation for protected speech, and his Fifth Amendment claim does not identify a property interest that has been infringed.

### A. Jablonski Cannot Plausibly Allege a First Amendment Retaliation Claim Without Identifying or Describing Constitutionally Protected Speech.

Jablonski's Opposition and his Complaint have something in common: they both press a claim that Jablonski's termination was unlawful retaliation for his speech, but they both decline to describe or otherwise identify the speech in question. Jablonski's candid acknowledgment that "his Complaint lacks significant factual details for at this stage he simply does not have any," Pl.'s Mem. 28, is fatal to his First Amendment claim.

The parties agree that the *Pickering* factors provide the framework for assessing a First Amendment claim like Jablonski's. To have such a claim, Jablonski "must have spoken as a citizen," and his speech must have been "on a matter of public concern." Pl.'s Mem. 28 (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968)). Moreover, his "interest, as a citizen, in commenting upon matters of public concern" must outweigh "the governmental interest in promoting the efficiency of the public services." *Id.* These factors are questions of law that, in suitable cases, can be decided on a motion to dismiss. *Id.*; Def.'s Mot. 4–5.

Whether a plaintiff has plausibly alleged a First Amendment claim depends on the usual *Twombly*/*Iqbal* analysis, and a failure to provide well-pleaded factual allegations supporting the claim results in dismissal. *See* Def.'s Mot. 5–6 (citing *Durand v. District of Columbia*, 38 F.3d 119 (D.D.C. 2014) and *Turner v. U.S. Capitol Police*, 34 F. Supp. 3d 124, 142 (D.D.C. 2014)). Measured by this standard, Jablonski's complaint does not rise to the occasion. It does not afford the Court sufficient information to assess whether the *Pickering* factors noted above, such as whether the speech was on a matter of public concern or whether Jablonski was speaking as a citizen, are plausibly alleged. Jablonski's general reference to "online activity" and his statement that he does not have "any information beyond that," Pl.'s Mem. 29, is just an admission that his complaint lacks the information required to plausibly allege his claim. His suggestion that Defendants "should be required to first provide" the information he requests cannot be reconciled with the federal rules. *See Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam*, 406 F. Supp. 3d 72, 83 (D.D.C. 2019) (rejecting a similar attempted "end-run around well-established pleading standards"), *aff'd*, No. 19-7124, 2020 WL 873574 (D.C. Cir. Feb. 14, 2020); *Felder v. WMATA*, 105 F. Supp. 3d 52, 59 (D.D.C. 2015) ("A plaintiff may not . . . use discovery to obtain the facts necessary to establish a claim that is plausible on its face pursuant to *Twombly* and *Iqbal*—even when those facts 'are only within the head or hands of the defendant.'" (alteration omitted)). Jablonski's failure to plausibly allege his First Amendment claim requires dismissal.

### B. Jablonski's Procedural Due Process Claim Fails Because He Had No Property Interest in His FBI Employment.

Jablonski does not establish a property interest in his FBI employment, and he fails to state a procedural due process claim for that reason. The framework for assessing his claim is not in dispute. Defs.' Mot. 6–7; Pl.s' Mem. 22–23. "For a property interest to be constitutionally protected by procedural due process, a person must 'have a legitimate claim of entitlement to it.'"

*Langeman*, 88 F.4th at 295 (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). Such a claim of entitlement must be "derived from 'existing rules or understandings that stem from an independent source such as state law,'" and the independent source "must place 'substantive limitations on official discretion.'" *Id.*

As Defendants' motion explains (at 7–8), the D.C. Circuit has established the framework for considering whether FBI policies or other authorities provide such a limitation on the FBI Director's summary dismissal authority, *Langeman*, 88 F.4th at 295, and nothing in Jablonski's complaint points to any policy that places a substantive limit on the Director's discretion. Jablonski all but concedes the point when he clarifies that he "is not claiming that Defendant FBI lacks an ability to utilize summary dismissals under appropriate circumstances." Pl.'s Mem. 27 n.8. The issue is not whether Jablonski's summary dismissal was proper (though it was); the issue is whether, in light of the Director's undisputed summary dismissal authority, FBI employees have a protected property interest in their continued employment. They do not, and so Jablonski's claim fails at this initial step of the inquiry.

To prove otherwise, Jablonski would need to establish a "legitimate claim of entitlement" to his FBI position that stems from an independent source and that places substantive limitations on the Director's ability to remove him. Jablonski's Opposition primarily relies on two FBI policy documents to support his alleged property interest in his employment: the 2024 "Offense Codes and Penalty Guidelines Governing FBI's Internal Disciplinary Process," ECF No. 10-5, and the "Office of Professional Responsibility Policy Guide," ECF No. 10-6. Jablonski argues that both documents, in their discussions of the summary dismissal authority, "limit the authority of the FBI Director to four situations," namely when the safety of the public, the safety of fellow employees, national security interests, or other compelling or exigent considerations are at stake. Pl.'s Mem.

26. But those documents confirm the authority of specified senior officials to summarily dismiss FBI personnel when they judge that "compelling or exigent considerations are at stake." ECF No. 10-6 at 8; *accord* ECF No. 10-5 at 3–4. When considering whether summary dismissal is appropriate, those officials "retain[] the discretion to consider any factors relevant to the case," and their decision is not subject to review. ECF No. 10-5 at 4. Because those documents establish no "substantive limitations on official discretion," they do not "create a legitimate property interest sufficient to state a claim under procedural due process." *Langeman*, 88 F.4th at 295. Jablonski says that *Langeman* did not consider these exact documents, Pl.'s Mem. 27 n.8, but Jablonski does not point to any new substantive limitations on the FBI Director's discretion that where not present in the Freeh Memo considered by the D.C. Circuit in that case.

Separately, Jablonski argues that he "reasonably relied upon" due process protections established by FBI policy "to afford him an opportunity to defend himself from impermissible actions." Pl.'s Mem. 24. He then urges the Court to conclude that "he possesses a constitutional property interest sufficient enough to deny the Defendants' Motion to Dismiss." *Id.* Jablonski's argument is flawed in two ways. First, it conflates two steps of the procedural due process inquiry. An assertion that Jablonski received inadequate process goes to the second step of that inquiry, not the first. He must start by "sufficiently plead[ing] deprivation of a property interest" in his employment, and his failure to do so means that this Court "need not . . . reach the issue of the adequacy of process which [Jablonski] was afforded." *Langeman*, 88 F.4th at 298. Second, Jablonski's argument conflates the procedural requirements associated with routine dismissals with the more abbreviated set of requirements associated with summary dismissals. *See, e.g.*, ECF No. 10-6 at ECF pp. 14–16 (describing procedural requirements for routine disciplinary cases in § 4.6.1, then describing abbreviated requirements for summary dismissals in § 4.6.4); ECF No. 10-

5 at ECF pp. 3–6 (similar). Jablonski does not identify a protection applicable to summary dismissals that he did not receive, and even if he did, that would not remedy his antecedent failure to establish a property interest in his employment.

Finally, Jablonski suggests that his arguments at least "merit discovery," so that he can identify other policies potentially relevant to his claim. Pl.'s Mem. 28 & n.9. That is the same "end-run around well-established pleading standards" that Jablonski proposes with respect to his First Amendment claim. *Ambellu*, 406 F. Supp. 3d at 83. The cases Jablonski cites here are inapposite: Andrew McCabe was a member of the Senior Executive Service protected by a statute governing removal of SES employees, *McCabe v. Barr*, 490 F. Supp. 3d 198, 201, 218 (D.D.C. 2020), while Peter Strok's procedural due process argument was based exclusively on a "Last Chance Agreement" he had proposed to Bureau leadership. *Strzok v. Garland*, 828 F. Supp. 3d 40, 67 (D.D.C. 2025) ("Plaintiff has never alleged or argued at any point that he had a pre-existing property interest in his employment at the time these events began to unfold; his sole argument is that the Last Chance Agreement changed the terms of the admittedly at-will employment."). Jablonski, by contrast, was a GS-13 employee who alleges nothing that would establish a property right in his employment.

### C. Recent District Court Decisions on CSRA Channeling Are Not Pertinent to Jablonski's Claims.

Jablonski argues at length that "Article II terminations fall outside of the CSRA," citing two recent out-of-circuit district court decisions for that proposition. Pl.'s Mem. 16–19 (citing *Comans v. Exec. Off. of the President*, Civ. A. No. 25-1237-MSJ-WEF, 2026 WL 1132803 (E.D. Va. Apr. 15, 2026), and *Comey v. Dep't of Justice*, Civ. A. No. 25-7625 (JMF), 2026 WL 1142679 (S.D.N.Y. Apr. 28, 2026)). Whatever the merits of those decisions, they have no application here.

Both *Comans* and *Comey* involved employees covered by the CSRA, and each stands for the proposition that the CSRA's jurisdictional channeling provision does not apply to removals effectuated solely under Article II. *See Comans*, 2026 WL 1132803, at *3; *Comey*, 2026 WL 1142679, at *2. Here, however, the parties agree that "Jablonski is precluded by the CSRA from filing an appeal to the MSPB." Pl.'s Mem. 19. Moreover, both *Comans* and *Comey* considered removals effectuated "for no reason other than the asserted authority of the President's Article II power." *Comans*, 2026 WL 1132803, at *1; *accord Comey*, 2026 WL 1142679, at *6 ("Defendants cited one and only one reason for her removal: Article II of the Constitution."). Here, by contrast, the removal was a summary dismissal consistent with the Director's longstanding personnel authorities. *See* Section I.B, *supra*. It follows that *Comans* and *Comey*, even if persuasive, would not affect the analysis here—though they "ruled in favor of the terminated employee and against the government," Pl.'s Mem. 17, they did so on issues not raised by this case. And even if *Comans* and *Comey* were somehow on point, there is no room for out-of-circuit authority here because binding Supreme Court and D.C. Circuit precedent resolve Jablonski's claims, as described elsewhere in Defendants' briefing in support of this motion.

## III. Jablonski's Administrative Procedure Act Claim Is Precluded by the Civil Service Reform Act.

Defendants' motion explained that Jablonski cannot circumvent the CSRA framework by pressing an APA claim. Defs.' Mot. 8–9. The rule that "[f]ederal employees may not circumvent the Act's requirements and limitations by resorting to the catchall APA to challenge agency employment actions" applies even where, as here, "the plaintiff cannot prevail in a claim under the CSRA." *Grosdidier v. Chairman, Broad. Bd. of Govs.*, 560 F.3d 495, 497 (D.C. Cir. 2009); *see Fornaro v. James*, 416 F.3d 63, 67 (D.C. Cir. 2005) ("[W]hat you get under the CSRA is what you

get."); *United States v. Fausto*, 484 U.S. 439, 448–49 (1988). Nothing in Jablonski's Opposition casts doubt on these well-established principles, and thus his APA claim should be dismissed.

## IV. Jablonski's Ultra Vires Claim Should Be Dismissed.

Similarly, Jablonski does not engage on several critical points related to his ultra vires claim. Defs.' Mot. 9–10. An APA ultra vires claim would be precluded for the reasons identified in Section III, *supra*. A non-statutory ultra vires claim—that is, an implied equitable claim under *Leedom v. Kyne*, 358 U.S. 184 (1958)—requires an agency action taken "entirely 'in excess of its delegated powers and contrary to a specific prohibition' in a statute." *Nuclear Regulatory Comm'n v. Texas*, 605 U.S. 665, 681–82 (2025). But Jablonski's search for a specific statutory prohibition Defendants have violated has yielded no fruit. He abandons any suggestion that the merit system principles preclude his termination, *see* Compl. ¶¶ 15–17, presumably for the reasons identified in Defendants' motion. And his Article II arguments—even if credited—would not undermine the lawful basis for the Director's undisputed authority to summarily dismiss FBI employees. *See* Section I.B, *supra*. Because Jablonski has not identified a statutory prohibition that Defendants have violated, and because he has not satisfied the other requirements set out in *Nuclear Regulatory Commission v. Texas*, 605 U.S. 665, he cannot state a non-statutory ultra vires claim.

## V. Jablonski's Derivative Claims Should Be Dismissed.

The parties appear to agree that Jablonski's mandamus and declaratory judgment claims are derivative of his other claims in this suit. Defs.' Mot. 10; Pl.'s Mem. 30. Because Jablonski does not state a viable constitutional, statutory, or ultra vires claim, his derivative claims should be dismissed as well.

**CONCLUSION**

For the foregoing reasons, Jablonski's complaint should be dismissed, and consideration of his premature motion for summary judgment should be stayed.

Dated: September 2, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: */s/ Andrew J. Vaden*

ANDREW J. VADEN
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2437

*Attorneys for the United States of America*