**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

BRIAN JABLONSKI *
*
Plaintiff, *
*
v. * Civil Action No: 26-00449 (JMC)
*
KASHYAP P. PATEL et al. *
*
Defendants. *
* * * * * * * * * * * *

**OPPOSITION TO DEFENDANTS' MOTION TO STAY CONSIDERATION OF PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Brian Jablonski ("Mr. Jablonski") properly brought before the Court a Cross-Motion for Partial Summary Judgment, *see* Dkt. 10 (filed July 20, 2026)("Cross-Motion"), addressing the threshold legal question of the authority of Defendant FBI Director Kashyap Patel ("Defendant Director Patel") to rely upon the President's Article II authority as a basis to terminate his employment without due process.

Interestingly, unlike the response from Defendants Director Patel, Federal Bureau of Investigation and the United States of America (collectively "Defendants") in other pending Article II cases where a new termination memorandum was issued by the Attorney General of the United States in ratification of Defendant Director Patel's original unlawful action, no such action has occurred here. That glaring failure makes it even more imperative and deserving for Defendants' Motion to Stay, Dkt. 13 (filed September 2, 2026), to be denied and Mr. Jablonski's Cross-Motion be substantively resolved prior to their pending Motion to Dismiss, Dkt. 8 (filed June 22, 2026).[1]

[1] The Defendants also consolidated their Motion to Stay with their Reply to their Motion to Dismiss, Dkt. 12 (filed September 2, 2026). The two responses apparently mirror each other.

Respectfully, the Government's action is procedurally improper and should be denied on that basis alone. Furthermore, the Government's failure to properly respond to Mr. Jablonski's Cross-Motion warrants deeming the motion conceded or, at a minimum, the issuance of an order to show cause why the Cross-Motion should not be treated as conceded. Regardless of the ultimate resolution this Court applies, the adjudication of Mr. Jablonski's Cross-Motion should respectfully be viewed as the paramount legal issue to be decided.

## ARGUMENT

### I. THE DEFENDANTS FAILED TO COMPLY WITH THE LOCAL RULES

Civil Rule 7(m) of the Local Rules for the United States District Court for the District of Columbia reads:

> Before filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is, to narrow the areas of disagreement. The duty to confer also applies to non-incarcerated parties appearing pro se. A party shall include in its motion a statement that the required discussion occurred, and a statement as to whether the motion is opposed.

*Campaign Legal Ctr. v. Values*, 710 F. Supp. 3d 35, 47 (D.D.C. 2024), *citing* LCvR 7(m). The purpose of this rule is to "encourage informal resolution to such disputes, or at least to reduce or narrow the issues the Court will consider." *U.S. ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.*, 235 F.R.D. 521, 529 (D.D.C. 2006). The rule requires at least a good faith effort, not mere "perfunctory action," and involve real action even as simple as contacting the other side's counsel by phone "within a reasonable period prior to filing the motion." *See U.S. ex rel. K & R Ltd. P'ship v. Massachusetts Hous. Fin. Agency*, 456 F. Supp. 2d 45, 52 (D.D.C. 2006); *see also Campaign Legal Ctr.*, 710 F. Supp. 3d at 48 ("But just conferring is not enough: the party must also certify whether it has done so and whether the motion is opposed.").

The courts routinely deny non-dispositive motions for failure to comply with Rule 7(m). *See English v. Wash. Metro. Area Transit Auth.*, 323 F.R.D. 1, 25 (D.D.C. 2017). "Therefore, when a party has failed to respect the requirements of Local Rule 7(m), the Court will exercise its discretion in selecting the remedy, bearing in mind the purpose of the rule." *Steele v. United States*, 2023 U.S. Dist. LEXIS 169832, *10 (D.D.C. Sept. 25, 2023).

The threshold question to determine if a motion is exempt from the conferral mandate under Rule 7(m) is whether the motion, if granted, "would result either in the determination of a particular claim on the merits or elimination of such a claim from the case." *See Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1215 (D.C. Cir. 1997). Unlike Mr. Jablonski's dispositive Motion for Partial Summary Judgment, Dkt. 10, the Defendants' Motion to Stay clearly falls outside the scope of that definition and thereby required conferral pursuant to Rule 7(m). The Motion to Stay, in and of itself, does not seek relief in a manner that will resolve or eliminate any claim. Instead, through a barebones footnote it simply seeks to postpone the deadline by which the Government must respond to Mr. Jablonski's Cross-Motion if the Court denies their Stay request. *See* Defs' Motion to Stay at 3 fn.1.

The Government does not provide any explanation for why it chose to pursue a stay in this manner, why it did not confer with undersigned counsel regarding the filing of this non-dispositive motion, or why it believes it is not required to comply with Rule 7(m). To be clear, the Government did not confer with undersigned counsel in any form prior to filing the Motion to Stay, as required by Rule 7(m). In fact, in a parallel case involving a similar Article II termination by the Defendants of another FBI employee, the Government sought the "postponement" of its deadline based on Federal Rules of Civil Procedure Rule 6, *see Pearson v.*

*Patel et al*., Civil Action No. 26-509 (D.D.C.)(RJL), Dkt. 18 (similar Motion to Stay at 2-3)(filed August 19, 2026).

As a matter of judicial notice, one can simply compare the filings and the Motion to Stay arguments proffered by the Defendants in *Pearson* on August 19, 2026, and determine they were clearly relied upon and copied for the Defendants' arguments now in Mr. Jablonski's case. *Cf. Pearson*, Civil Action No. 26-509 (D.D.C.)(RJL), Dkt. 18 (Motion to Stay at 2-3)(filed August 19, 2026) *with* Dkt. 13 (Motion to Stay at 2-3)(filed September 2, 2026). Thus, while perhaps in *Pearson* the Defendants' counsel could claim "inadvertence," in this case the Defendants were on clear notice of the LCvR 7(m) argument and simply and deliberately flouted its requirement.

The Government arguably could have simply sought a stay by invoking the inherent authority of a district court to control its docket. *See Nat'l Indus. for the Blind v. VA*, 296 F. Supp. 3d 131, 137 (D.D.C. 2017); *see also Hulley Enters. Ltd. v. Russian Fed'n*, 211 F. Supp. 3d 269, 276 (D.D.C. 2016)(identifying key interests as judicial economy and hardship to parties). The Government clearly chose not to do so, and it instead cited four other cases in support of its desired approach. *See* Defs' Motion to Stay at 2-3 (collecting cases). These are the same four cases cited by the Defendants in the *Pearson* litigation but there they argued it was for the proposition that the Court can impose a stay in reliance upon FRCP 6, even though none of the cases rely upon such authority. *See, e.g., Zavadovsky v. Rabl*, 2025 U.S. Dist. LEXIS 166891, *10 (D.D.C. Aug. 27, 2025)(nondescript reference to agency seeking stay in interest of judicial economy); *Comm. on Ways & Means v. Dep't of the Treasury*, 2019 U.S. Dist. LEXIS 147260, *2 (D.D.C. Aug. 29, 2019)(stating only non-movant party "proposed" holding motion for summary judgment in abeyance until court first resolved threshold question in motion to

dismiss); *West Virginia ex rel. Morrisey v. HHS*, 2014 U.S. Dist. LEXIS 204864, *2-*3 (D.D.C. Nov. 3, 2014)(describing motion to stay proceedings without elaboration on mechanism relied upon); *Furniture Brands Int'l, Inc. v. Int'l Trade Comm'n*, 2011 U.S. Dist. LEXIS 157667, *2 (D.D.C. Apr. 8, 2011)(delineating motion to stay filed without details).[2]

Accordingly, the failure by the Government to comply with LCvR 7(m) warrants denying the Defendants' Motion to Stay as improper.

**A. The Government Has Procedurally Conceded Ms. Jablonski's Motion for Partial Summary Judgment**

Given this procedural infirmity, and the absence of a timely filed opposition by the Defendants to Mr. Jablonski's Cross-Motion, the only remaining question then is what further action the Court can and should take at this juncture. Generally speaking, a failure to timely file a response to a dispositive motion would warrant treating the Cross-Motion as conceded. *See Fox v. Am. Airlines, Inc.*, 389 F.3d 1291, 1295 (D.C. Cir. 2004)("[W]here the district court relies on the absence of a response as a basis for treating the motion as conceded, we honor its enforcement of the rule"), *quoting Twelve John Does v. Dist. of Columbia*, 117 F.3d 571, 577

---

[2] For what it is worth, a review of the cases finds that three of them permitted holding off resolution of the motion for summary judgment because of the likelihood of factual disputes that would need to first be resolved through discovery. *See Zavadovsky*, 2025 U.S. Dist. LEXIS 166891, *11 ("Plaintiff's motion for partial summary judgment raises factual issues that are likely to be informed by discovery that has not yet taken place."); *Comm. on Ways & Means*, 2019 U.S. Dist. LEXIS 147260, *6-*8 (outlining how pre-discovery summary judgment was disfavored given pending appellate guidance in related cases and stated intention of a party to seek discovery); *West Virginia ex rel. Morrisey*, 2014 U.S. Dist. LEXIS 204864, *4 (noting need for compilation of full administrative record before summary judgment briefing). The fourth case, *Furniture Brands Int'l, Inc.*, 2011 U.S. Dist. LEXIS 157667, contains little in the way of facts and ultimately was resolved by granting the plaintiff's own motion to dismiss without prejudice. *See Furniture Brands Int'l, Inc. v. Int'l Trade Comm'n*, 804 F. Supp. 2d 1, 7 (D.D.C. 2011). Mr. Jablonski's summary judgment motion should require no discovery or compilation of an administrative record. It is believed that the Court has before it everything needed to adjudicate the legal question of whether an FBI Director possesses Article II authority to terminate an employee and then apply the appropriate remedy.

(D.C. Cir. 1997); *see also Walker v. District of Columbia*, 317 F.R.D. 600, 605 (D.D.C. 2016)(noting corrective action courts can take given "obvious interest in deterring disobedience" of court rules); *D'Onofrio v. Sfx Sports Group, Inc.*, 247 F.R.D. 43, 45 n.2 (D.D.C. 2008)("The Court does not take Local Rule 7(m) lightly ..."); *Equal Rights Ctr. V. Post Props., Inc.*, 246 F.R.D. 29, 31 (D.D.C. 2007)(citing cases where motions were denied for failure to comply with Rule 7(m)); *Stephenson v. Cox*, 223 F. Supp. 2d 119, 121 (D.D.C. 2002)("A party who fails to file a timely response "is deemed to have waived his opposition to the [motion].").[3]

The Defendants, in order to preserve their ability to still respond to Mr. Jablonski's Motion and not suffer a concession, attempt to backdoor an extension request through a simple footnote. Defs' Motion to Stay at 3 n.1 ("If the Court declines to stay consideration of Jablonski's Motion, Defendants respectfully request that this Court provide thirty days from the date of the Court's order for Defendants to further respond to Jablonski's motion."). This is also not a proper mechanism by which to request an extension of time from the Court, nor was consent sought from the undersigned pursuant to LCvR 7(m) for such a request either.

If the Court is hesitant to take such action at this juncture, it certainly would be within its inherent discretion to first issue to the Defendants an order to show cause for why Mr. Jablonski's Cross-Motion should not be treated as conceded. *See Ramseur v. Barreto*, 216 F.R.D. 180, 183 n.6 (D.D.C. 2003). Or simply deny the Motion and respectfully proceed forward with this substantive dispute in order to issue a ruling on the filings.

---

[3] The Defendants may claim they were not required to comply with LCvR 7(m) because it does not apply to filings seeking denial of a pending motion that seeks dispositive relief and they alternatively sought the denial of Plaintiff's Cross-Motion. That has been tried and rejected previously in *Niedermeier v. Office of Max S. Baucus*, 153 F. Supp. 2d 23, 26 (D.D.C. 2001) ("Nevertheless, plaintiff urges this Court to read into Local Rule 7.1(m) an exception for motions that are 'closely intertwined' with dispositive motions. However, Local Rule 7.1(m) clearly states that it applies to '*any* nondispositive motion,' and provides no exception for motions relating to dispositive motions.")(internal citation omitted)(emphasis in original).

## II. THE DEFENDANTS' STAY ARGUMENT MISINTERPRETS THE PRECLUSIONARY LEGAL EFFECT OF DETERMINING THE SIGNIFICANCE OF DEFENDANT DIRECTOR PATEL'S TERMINATION DECISION AND DEMONSTRATES THE NEED TO DECIDE THAT ISSUE FIRST

The Defendants, unlike in *Pearson* where the new Attorney General has legally ratified Defendant Director Patel's unlawful termination action, *see Pearson*, Civil Action No. 26-509 (D.D.C.)(RJL), Dkt. 18-1 (Attorney General Todd Blanche ratification), have apparently strategically rolled the dice to see what happens if that pathway, for whatever reason, is not attempted.[4]

If Mr. Jablonski is correct in his legal argument that Defendant Director Patel lacked the legal authority to terminate him in the first place, then it is actually the Defendants' jurisdictional argument that is premature and inapplicable. They cannot move to legally divest this Court of jurisdiction regarding an issue that never should have been here in the first place. Admittedly, the posture of this debate is somewhat the historical proverb of which comes first, the chicken or the egg, or placing the cart before the horse, but the distinction matters as a question of law and factual impact. Because Defendant Director Patel lacked legal authority, which Mr. Jablonski would argue has been effectively conceded by the Defendants' actions in the other cases where the Attorney General ratified the termination decision, Mr. Jablonski would need to be reinstated to his position and provided back pay (and all associated benefits) to January 30, 2026. Whether the Attorney General then terminates Mr. Jablonski and starts the case all over again is up to the Defendants. But the question of whether lawful authority was possessed at any time by the FBI

---

[4] Besides the *Pearson* case, the Attorney General has ratified Article II termination decisions by Defendant Director Patel in at least two other FBI cases as well. *See e.g., Driscoll et. al. v. Patel et al.*, Civil Action No. 25-3109 (D.D.C.)(JMC)(termination of FBI senior officials by Director), Dkt. 31-1 (filed March 6, 2026); *Jane Does #1-9, et. al. v. Patel et al*. Civil Action No. 25-4258 (D.D.C.)(TNM)(termination of numerous FBI personnel by Director), Dkt. 14-2 (filed February 6, 2026).

Director to be able to rely upon the President's Article II authority to terminate an employee without due process has to respectfully be ruled upon as the first natural step.

**A. Mr. Jablonski's SF-50 Disputes The Defendants' Argument That They Relied On Provisions Other Than The President's Article II Authority**

Mr. Jablonski's termination letter from Defendant Director Patel dated January 30, 2026, states:

> This document provides official notice that you are being summarily dismissed from your position at the Federal Bureau of Investigation, and removed from the federal service, under my authority as the FBI Director, effective immediately.
>
> You have demonstrated unprofessional conduct, and pursuant to Article II of the United States Constitution and the laws of the United States, your employment with the Federal Bureau of Investigation is hereby terminated.

Exhibit "1". The Defendants seek to rely upon the wording "and the laws of the United States" as an argument that multiple alternative pathways existed and were relied upon to terminate Mr. Jablonski. Defs' Motion to Stay at 3. Except Defendant Diretor Patel's letter is literally just a form letter that bears little to no substantive relationship to Mr. Jablonski's actual circumstances, as a matter of fact or law. If anything is to be dispositive, it is Mr. Jablonski's Standard Form 50 ("SF-50") that provides the appropriate context.

The SF-50 is considered by many to be the single most important official record of employment for U.S. federal government workers that is maintained by the federal government regarding its civil servants. It "constitutes official documentation of Federal employment." *See* Guide to Processing Personnel Actions, Office of Personnel Management, September 2026, Ch. 1, P. 2, at *https://www.opm.gov/policy-data-oversight/data-analysis-documentation/personnel-documentation/processing-personnel-actions/guide_to_processing_personnel_actions.pdf* (last accessed September 16, 2026). Mr. Jablonski's SF-50 was issued on February 2, 2026, and it details the legal basis and explanation for his termination. Exhibit "2". The First Action Codes are particularly informative. Code 5-B notes that the personnel action taking place was

"TERMINATION" and Code 5-D provides the relevant legal authority, i.e., the "law, executive order, rule, regulation, or other basis that authorizes the appointing officer to effect a personnel action on an employee," *see https://data.opm.gov/data-standards/ehri-data-standards* (search term "legal authority")(last accessed September 16, 2026), being relied upon, which was 28 U.S.C. § 536. *Id*. Now, that section of Title 28 does not explain anything because all it serves to do is except all FBI positions "from the competitive service, and the incumbents of such positions occupy positions in the excepted service." *Id*. It is this statutory provision, in part, that condemns Mr. Jablonski, and the vast majority of FBI employees, to not have any appellate rights before the Merit Systems Protection Board. Normally, any type of proposed disciplinary action for an FBI employee such as Mr. Jablonski would result in internal administrative due process.

That point aside, the Remarks in Section 45 of the SF-50 "explain the personnel action recorded," *see https://data.opm.gov/data-standards/ehri-data-standards* (search term "remarks")(last accessed September 16, 2026), and describe the legal basis for authorizing the First Action: "Article 2 U.SC." [sic][US Constitution]. Exhibit "2". There is no reference in the official personnel record for Mr. Jablonski of any other "laws of the United States" that effected his termination. The sole legal basis/authority acknowledged by the Defendants for terminating Mr. Jablonski was "Article 2" of the U.S. Constitution. The Defendants' after-the-fact claim in legal filings that other laws were invoked by Defendant Director Patel, Defs' Mot. at 4, should not be deemed legally sufficient.

Thus, if Defendant Director Patel did not possess legal authority at the outset to ever have terminated Mr. Jablonski under the President's Article II authority, as argued by his pending Motion for Partial Summary Judgment, than the Defendants' Motion to Dismiss is moot because

Mr. Jablonski was never actually fired.[5] The interests of "judicial economy" are in no way being protected or furthered, as the Defendants argue, Defs' Mot. at 2, by ignoring this threshold fact.

Respectfully, the arguments proffered here by Mr. Jablonski are not intended to result here and now in a substantive ruling in his favor with respect to his Cross-Motion. But they are designed to persuade this Court to decline to stay the adjudication of the summary judgment proceedings before deciding the Defendants' Motion to Dismiss.

## **CONCLUSION**

For the reasons outlined above, this Court should respectfully deny the Defendants' Motion to Stay. The Court should either treat Mr. Jablonski's Cross-Motion as conceded, issue a show cause order or require the Defendants to substantively respond.

Date: September 16, 2026

Respectfully submitted,

*s/Mark S. Zaid*

Mark S. Zaid, Esq. (D.C. Bar #440532)
Bradley P. Moss, Esq. (D.C. Bar #975905)
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W., Suite 700
Washington, D.C. 20036
(202) 498-0011
Mark@MarkZaid.com
Brad@MarkZaid.com

Attorneys for the Plaintiff

[5] The Defendants misinterpret Mr. Jablonski's recognition that there are existing authorities under certain circumstances for an FBI Director to summarily dismiss an employee, Def's Mot. at 4, *citing* Pl's Memo at 15 fn.4, but none of those exist here. In 2021, the Department of Justice's Office of the Inspector General published a report on Defendant FBI's misconduct investigations process and noted that for decades summary dismissal was reserved for "extraordinary cases 'where the safety of the public, our fellow employees, national security interests or other compelling considerations may be at stake.'" "Review of the Federal Bureau of Investigation's Adjudication Process for Misconduct Investigations," 21-127, at 15 (2021), available at *https://oig.justice.gov/sites/default/files/ reports/21-127.pdf* (last accessed September 16, 2026).